RUSS, AUGUST & KABAT
Larry C. Russ, State Bar No. 082760
Nathan D. Meyer, State Bar No. 239850
Justin E. Maio, State Bar No. 304428
12424 Wilshire Boulevard, 12th Floor
Los Angeles, California 90025
Telephone: (310) 826-7474
Facsimile: (310) 826-6991

Attorneys for Plaintiff
SANDOW + FRED SEGAL, LLC

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SANDOW + FRED SEGAL, LLC, a Delaware Limited Liability Company,<br><br>Plaintiff,<br><br>vs.<br><br>DEFENDANT CORMACKHILL, LP, a Delaware Limited Partnership<br><br>Defendant. | Case No. 2:16-cv-6653<br><br>**COMPLAINT FOR:**<br><br>**(1) TRADEMARK INFRINGEMENT;**<br><br>**(2) UNFAIR COMPETITION UNDER CALIFORNIA BUSINESS & PROFESSIONS CODE § 17200;**<br><br>**(3) COMMON LAW UNFAIR COMPETITION; AND**<br><br>**(4) ACCOUNTING**<br><br>**DEMAND FOR JURY TRIAL** |

160902 Complaint.docx

COMPLAINT

Plaintiff Sandow + Fred Segal, LLC ("Plaintiff" or "Sandow + Fred Segal") alleges as follows against defendant Cormackhill, LP ("Defendant" or "Cormackhill"):

1. This case arises from Defendant's intentional infringement and violation of Plaintiff's protected "Fred Segal" trademarks (collectively, "Fred Segal Marks").

**The Fred Segal Story**

2. This case is about Defendant's wrongful appropriation of the "Fred Segal" mark in connection with the former Fred Segal flagship store on Melrose Boulevard. Defendant has appropriated the mark, deceived consumers and traded on Plaintiff's goodwill by maintaining a "Fred Segal" sign on the building, even though the location no longer has any affiliation with Fred Segal.

3. Fred Segal graduated from UCLA in the mid 1950s, and entered the apparel business, working for the (now defunct) HIS Sportswear. In the late 1950s, he decided to sell high-fashion denim; at the time, the market was driven by mass-market product going for $2.50 a pair.

4. In 1961, Mr. Segal began selling $19.95 low-rise indigo jeans out of an eponymous storefront at the corner of Melrose and Crescent Heights in Los Angeles. Mr. Segal pioneered the concept of curated denim in California at a time when the industry was dominated by such corporate behemoths as Levi Strauss.

5. To fill out the Melrose location, Mr. Segal leased out sections of the store to similarly curated tenants.

6. Mr. Segal erected a large sign with the name "Fred Segal" on the exterior of the building, and a legend was born.



7. During the latter half of the twentieth century, the Fred Segal store on Melrose (and a later additional location in Santa Monica) became one of the trendiest fashion destinations in Los Angeles, and indeed the West Coast.

8. The Fred Segal store became a cultural icon. Bret Easton Ellis's classic 1980s novel of Los Angeles, *Less Than Zero*, repeatedly referenced the store. The location and the brand have been repeatedly referenced in television, film, and literature. Fred Segal has deep roots in Los Angeles culture (particularly in the Hollywood area), and has been an iconic shopping destination for celebrities and locals alike for decades. It has discovered and launched numerous famous fashion and beauty brands, and was the pioneer of experiential retail.

9. Some of Fred Segal's early tenants were given permission to use the name "Fred Segal" as part of their name in the lease, such as "Fred Segal Girl," and so on. None of those tenants remain on the Melrose premises.

10. Because of the growing fame of his name, Fred Segal (and ultimately his family company, Fred Segal, LLC) registered a number of trademarks for the "Fred Segal" name:

| Mark | Ser. No. Filing Date | Reg. No. Reg. Date | Goods/Services |
|---|---|---|---|
| FRED SEGAL | 78848457 Mar. 21, 2006 | 3205793 Feb. 6, 2007 | 25 – Clothing, men's, women's, children's and infant's sportswear and apparel and any other clothing items generally sold in clothing and sportswear retail shops and stores, namely, athletic footwear, athletic shoes, bathing suits, bathing trunks, bathrobes, beach cover-ups, beachwear, belts, berets, cloth bibs, bibs not of cloth or paper, bikinis, blouses, bodysuits, boots, bow ties, boxer shorts, bras, brassieres, briefs, bustiers, camisoles, caps, chemises, coats, cover-ups, dresses, dressing gowns, evening gowns, gloves, golf shirts, golf shoes, gowns, gym shorts, halter tops, hats, head wear, hosiery, housecoats, infant wear, jackets, jeans, jerseys, jogging suits, jumpers, jumpsuits, knit shirts, leather coats, leather jackets, leggings, leotards, lingerie, loungewear, maillots, miniskirts, mittens, ear muffs, neckties, nightgowns, night shirts, overalls, overcoats, pajamas, panties, pants, pantsuits, pantyhose, pareu, parkas, playsuits, polo shirts, pullovers, rain coats, rainwear, sandals, sarongs, sashes, scarves, shawls, shirts, shoes, sweat shorts, ski wear, skirts, slacks, sleepwear, slippers, slips, socks, thermal socks, sports coats, sports shirts, stockings, stoles, suit coats, suits, warm-up suits, sun visors, suspenders, sweat |

| | | | |
|---|---|---|---|
| | | | shirts, sweat shorts, sweaters, sweat socks, swim trunks, swimwear, swimsuits, t-shirts, tank tops, tap pants, tennis wear, topcoats, tank tops, tracksuits, trousers, tunics, turtleneck sweaters, turtlenecks, tuxedos, underclothes, undergarments, underpants, undershirts, underwear, unitards, v-neck sweaters, veils, vested suits, vests, waistcoats, foul weather gear, wedding gowns, wetsuits, wind-resistant jackets and wraps |
| Fred Segal | 72332744 Jul. 16, 1969 | 0895094 Jul. 21, 1970 | 25 – Wearing Apparel, Such As Pants, Suits, Jackets, Belts, Shirts, Sweaters, And Scarfs |
| FRED SEGAL | 78848440 Mar. 28, 2006 | 3290672 Sep. 11, 2007 | 35 – Retail store services featuring clothing, headwear, footwear, eyewear, jewelry, gifts, cosmetics, fragrances, fashion accessories, and small leather goods |
| Fred Segal | 78848448 Mar. 28, 2006 | 3290673 Sep. 11, 2007 | 35 – Retail store services featuring clothing, headwear, footwear, eyewear, jewelry, gifts, cosmetics, fragrances, fashion accessories, and small leather goods |

11. In 2001, the Segal family sold the Melrose building to the Brown family, helmed by Bud Brown, Segal's long time insurance broker.

12. As part of the sale, the Segal family granted the Brown family a license to use the Fred Segal name in connection with the Melrose building.

13. In relevant part, the written license (1) limited the Brown family's right to use the Fred Segal marks to the Melrose location and (2) provided that the license terminated if the Melrose location was transferred out of the Brown family.

14. The license further provided that if, at the time the location was transferred out of the Brown family, any tenants still had the right to use the "Fred Segal" name as a condition of their leases, the new owners could continue maintain the Fred Segal sign on the Melrose building.

15. By early 2016, no tenants remained at the Melrose location with the right to use the Fred Segal name arising out of their original leases.

16. Various licensees around the world have and are paying millions of dollars a year for a license to use the Fred Segal trademarks in connection with free standing retail shopping centers.

17. On or about March 23, 2016 Defendant Cormackhill, LP, purchased the Melrose building from the Brown family. On information and belief, none of the limited or general partners of Cormackhill are members of the Brown family.

18. No representative of Defendant Cormackhill, LP even attempted to negotiate a license to use the Fred Segal trademarks prior to purchasing the facility at Melrose and Crescent Heights, in Los Angeles.

19. When Plaintiff learned about the sale of the Melrose facility from the Brown family to Cormackhill, LP, a representative of Plaintiff met with a representative of Defendant to discuss Cormackhill's plans for the facility. In particular, Cormackhill was advised that it had no license to continue to use the Fred Segal marks on the exterior of the facility. Plaintiff was advised that Cormackhill would consider Plaintiff's position and would advise about its future plans.

20. Having failed to hear from Defendant for a number of weeks, on August 24, 2016, counsel for Plaintiff wrote to Defendant, and demanded that Defendant acknowledge Plaintiff's trademark rights and agree to remove the Fred Segal sign from the premises unless a license agreement was negotiated and agreed upon.

21. Defendant responded that it does not recognize Plaintiff's rights and will not remove Fred Segal signage from the Melrose facility.

22. The actual value of a License to the Fred Segal marks at the iconic facility on Melrose and Crescent Heights likely exceeds $200,000 per month and could be as high as $500,000 per month.

23. Plaintiff is informed, believes and based thereon alleges that Defendant's conduct is willful, wanton malicious and in conscious disregard of Plaintiff's rights.

**Parties**

24. Plaintiff Sandow + Fred Segal, LLC ("Plaintiff" or "Sandow + Fred Segal") is a Delaware limited liability company with its principal place of business in Boca Raton, Florida. Plaintiff is the exclusive licensee of all right, title and interest in the Fred Segal Marks and the corresponding Certificates of Registration.

25. Plaintiff is informed, believes and based thereon alleges that Defendant Cormackhill, LP ("Cormackhill") is a Delaware limited partnership with its principal place of business in the County of Los Angeles, State of California.

26. Plaintiff and Defendant offer retail store and online retail services featuring clothing, headwear, footwear, eyewear, handbags, jewelry, gifts, fashion accessories and small leather goods.

**Jurisdiction and Venue**

27. This is an action for registered trademark infringement in violation of §§ 32 and 43(a) of the Lanham Act, 15 U.S.C. §§ 1114 and 1125(a), and unfair competition under California state law, which activities have occurred in this district and elsewhere in interstate commerce within the United States.

28. This court has jurisdiction pursuant to § 39 of the Lanham Act 15 U.S.C. § 1121, 28 U.S.C. § 1331 and §§ 1338(a) and (b). This court has jurisdiction over claims in this complaint that arise under California state law pursuant to 28 U.S.C. § 1367 as the California state law claims are so related to the federal claims

1  that they form part of the same case or controversy and derive from a common nucleus of operative fact.

29. Defendant is subject to personal jurisdiction in this district and court because Defendant resides, is headquartered in, conducts business in and/or conducted a substantial part of, if not all of, its infringing and violating conduct in this district.

30. Venue in this district and court is proper pursuant to 28 U.S.C. § 1391 because it arises out of a physical sign located in this District, at the corner of Crescent Heights and Melrose. In addition, Defendant resides, is headquartered in, conducts business in and/or conducted a substantial part of, if not all of, its infringing and violating conduct in this district and because all parties are subject to personal jurisdiction and venue in this district and court.

### First Claim for Relief: Trademark Infringement

31. Plaintiff repeats the allegations of paragraphs 1-26, *supra*, and incorporates them by reference as if herein set forth in their entirety.

32. From 1970, the Fred Segal trademark has been in use in interstate commerce to identify the source of its goods and services and to distinguish it from others by prominently displaying the Fred Segal trademark in connection with its goods and services.

33. Defendant's infringing uses, including without limitation use of the "Fred Segal," sign at the Melrose location ("Defendant's Infringing Uses") are in imitation, infringement and violation of Plaintiff's Fred Segal Marks and intended to steal and trade on the goodwill created by Plaintiff.

34. Defendant has, without permission, willfully and with the intention of benefiting from the reputation and goodwill of Sandow + Fred Segal, offered services under Defendant's Infringing Uses, including without limitation "Fred Segal."

35. There is a substantial likelihood of confusion on the part of the public and clients regarding the use of the Fred Segal Marks by Defendant.

36. Defendant's conduct and Defendant's Infringing Uses constitute trademark infringement in violation of § 43(a) of the Lanham Act (15 U.S.C. § 1125(a)) and § 32 of the Lanham Act (15 U.S.C. § 1114), which prohibit the use in commerce in connection with the sale of goods or rendering of any services of any word, term, name, symbol or device, or any combination thereof, that is likely to cause confusion, or to cause mistake, or to deceive as to the source of the goods or services.

37. As a direct and proximate result of Defendant's intentional, willful and wanton conduct and Defendant's Infringing Uses, Plaintiff has been injured and will continue to suffer damages ranging from $200,000 to $500,000 per month as well as irreparable harm and injury to its business, reputation and goodwill unless Defendant is restrained from infringing Plaintiff's Fred Segal Marks, including without limitation being restrained from using Defendant's Infringing Uses.

38. Plaintiff has no fully complete and adequate remedy at law and is entitled to injunctive relief pursuant to 15 U.S.C. §§ 1114 and 1116(d).

39. Plaintiff is entitled to recover actual damages and Defendant's profits pursuant to 15 U.S.C. § 1117(a); treble damages pursuant to 15 U.S.C. § 1117(a) and (b); attorney's fees and costs pursuant to 15 U.S.C. § 1117(a); seizure of all infringing goods pursuant to 15 U.S.C. § 1116(d); and impoundment and destruction of all infringing goods pursuant to 15 U.S.C. § 1118.

**Second Claim for Relief: Unfair Competition Under California Business & Professions Code §§ 17200 *Et Seq*.**

40. Plaintiff repeats the allegations of paragraphs 1-36, *supra*, and incorporates them by reference as if herein set forth in their entirety.

41. Defendant's acts and conduct constitute unfair competition and misappropriation of Plaintiff's trademark and related rights in violation of California Business & Professions Code §§ 17200 *et seq*.

42. Defendant misappropriated, including in bad faith, the labors and expenditures of Plaintiff and its predecessors.

43. As a direct and proximate result of Defendant's unlawful, unfair and/or fraudulent business practices including without limitation Defendant's Infringing Uses, Plaintiff has suffered, and will continue to suffer, irreparable harm and injury.

44. Plaintiff has no fully complete and adequate remedy at law, and Defendant's conduct has caused and will continue to cause irreparable harm and injury to Plaintiff's business, reputation and goodwill.

45. Plaintiff is entitled to an injunction prohibiting Defendant from continuing its actionable misconduct including without limitation Defendant's Infringing Uses, and Plaintiff is entitled to restitution of all amounts acquired by Defendant by means of such wrongful act.

### Third Claim for Relief: Common Law Unfair Competition

46. Plaintiff repeats the allegations of paragraphs 1-41, *supra*, and incorporates them by reference as if herein set forth in their entirety.

47. Defendant's actionable misconduct is intended to and/or likely to cause confusion, misrepresentation, mistake and/or deceive the public and clients as to the affiliation, approval, sponsorship, or connection between Plaintiff and Defendant, and therefore constitutes common law unfair competition under California law.

48. Plaintiff has been damaged and will continue to be damaged by Defendant's actionable misconduct.

49. Defendant's actionable misconduct is causing and will continue to cause Plaintiff to suffer irreparable harm and injury and, unless Defendant is restrained from so acting including Defendant's Infringing Uses, Plaintiff will

1 continue to be so damaged because it has no fully complete and adequate remedy at
2 law.

3     50. Accordingly, Plaintiff respectfully requests that Defendant be enjoined
4 from continuing their actionable misconduct including without limitation
5 Defendant's Infringing Uses, and that Plaintiff be awarded damages in an amount to
6 be determined at trial.

7     51. Plaintiff is informed, believes and based thereon alleges that
8 Defendant's conduct was willful, wanton malicious and in conscious disregard of
9 Plaintiff's rights, justifying an award of punitive and/or exemplary damages in an
10 amount to be proven at trial.

### Fourth Claim for Relief: Accounting

12     52. Plaintiff repeats the allegations of paragraphs 1-46, *supra*, and
13 incorporates them by reference as if herein set forth in their entirety.

14     53. Plaintiff is informed, believes and based thereon alleges that Defendant
15 has acquired significant gains, profits and advantages as a direct result of
16 misappropriating the Fred Segal Marks for a period unknown to Plaintiff.

17     54. Accordingly, Plaintiff respectfully requests an Accounting of all of
18 Defendant's gains, profits and advantages from their trademark infringement and
19 unfair competition, including with limitation Defendant's Infringing Uses, for a
20 period of five years.

### Prayer for Relief

22 Wherefore, Plaintiff prays for relief and judgment against Defendant as
23 follows:

24     1. An order enjoining each of Defendant from engaging in, offering and/or
25 providing goods or services in connection with any name or art or dress identical to
26 or confusingly similar to Plaintiff's Fred Segal Marks, including without limitation
27 Defendant's Infringing Uses;

28

RUSS, AUGUST & KABAT

2. For an accounting to be performed to identify Defendant's actual gains, profits and advantages from their trademark infringement and unfair competition, including with limitation Defendant's Infringing Uses, for a period of five years;

3. For an award of Defendant's gains, profits and advantages derived from their trademark infringement and unfair competition, including without limitation Defendant's Infringing Uses;

4. For treble damages pursuant to 15 U.S.C. §§ 1117(a) and (b);

5. For punitive damages;

6. Declaring this to be an exceptional case within the meaning of 15 U.S.C. § 1117;

7. For Plaintiff's expenses and attorney's fees pursuant to 15 U.S.C. § 1117(a); and

8. For such other relief as the court deems just, equitable and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff Sandow + Fred Segal, LLC demands trial by jury on all issues.

DATED: September 2, 2016

RUSS, AUGUST & KABAT
Larry C. Russ
Nathan D. Meyer
Justin E. Maio

By: _____
Larry C. Russ
Attorneys for Plaintiff
SANDOW + FRED SEGAL, LLC

160902 Complaint.docx

12

COMPLAINT